UNITED STATES, Appellee

v

ROBERT H. LYNCH, Lieutenant Colonel, U. S. Army, Appellant

9 USCMA 523, 26 CMR 303

*First Lieutenant Herbert R. Brown* argued the cause for Appellant, Accused. With him on the brief were *Colonel Edward M. O'Connell, Colonel James Garnett* and *Captain Arnold I. Melnick.*

*First Lieutenant Jon R. Waltz* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel John G. Lee* and *Major Thomas J. Nichols.*

## Opinion of the Court

HOMER FERGUSON, Judge:

Accused pleaded guilty to and was found guilty of being absent without leave, in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886; larceny of $12,058.07, property of the Fort Chaffee Officers' Open Mess, in violation of Article 121, 10 USC § 921; of signing a false official statement with intent to deceive, in violation of Article 107, 10 USC § 907; and of uttering a forged check in the amount of $798.84, with intent to defraud, in violation of Article 123, 10 USC § 923. He was sentenced to dismissal from the service, total forfeitures, and confinement at hard labor for three years. The board of review reduced the period of the sentence to two years because the court-martial failed to sustain a challenge addressed to its president. However, the board was of the opinion that in view of the accused's pleas of guilty to all of the offenses charged, the error could only affect the sentence and that reassessment thereof would purge such error. During the trial the president of the court-martial objected to taking a *voir dire* oath. Thereafter, the following colloquy occurred during defense counsel's *voir dire* of the president:

"DC: . . . Assuming that an officer has been tried for the offenses of absence without leave, larceny of approximately $12,000.00, making a false official statement and uttering a check and has been convicted of those offenses and you are deliberating on a proper sentence in his case, would you feel compelled to vote for his dismissal from the service regardless of the mitigation offered by the defense?

"[The president:] I certainly would."

The law officer sustained an objection to the question upon the ground that it was hypothetical. Thereafter, the defense counsel tried unsuccessfully several times to rephrase it to the satisfaction of the law officer. Further, in the *voir dire* examination, the president testified that during a recess he had commented to other members of the court-martial upon the question addressed to him by defense counsel. The defense counsel then asked, "Do you feel like they were influenced by your comments?" The president replied, "I don't know. I think they were probably influenced by your question." He also stated he had said to other court-martial members during the recess that he regarded having been placed under separate oath as an implication against his honor. He then addressed individual civilian defense counsel as follows:

"You, as a civilian lawyer, may not be aware that an officer of the United States Army is bound to tell the truth.

"Possibly, in civilian courts, you do not trust the witnesses or the members of the jury. This is not a jury. This is a court—it's a military court. It is a custom of the service—from all usage of the military courts—that those members of the court are officers and—I'm running out of words. I think you know what I mean.

There is a difference between civilian trials and military trials."

Defense counsel challenged the president for cause. The court-martial voted adversely to his challenge and defense counsel thereupon peremptorily challenged the president. The law officer instructed the court-martial they should not be prejudiced by the in-and-out-of court remarks of its president. The court-martial members gave silent acquiescence to this instruction. The defense then moved for a mistrial. The motion was overruled.

We granted the accused's petition for review to determine three issues.

I

The first issue with which we are concerned questions whether the president of the court so inflamed the membership thereof that the court was incapable of sitting in judgment of the accused.

"It is the right of a defendant accused of crime to have nothing reach the mind of the jury concerning the case except strictly legal evidence admitted according to law, and if facts prejudicial to him reach the jury otherwise, it is the duty of the trial judge to withdraw a juror and grant a new trial." Griffin v United States, 295 Fed 437 (CA 3d Cir) (1924).

"It is the duty of the trial judge to maintain the integrity of trials by jury, and if it appears at any stage of the trial before the verdict that misconduct of any juror or other person has tainted the panel with any sort of corruption, or intimidation, or coercion, the trial should be stopped and a mistrial granted." Klose v United States, 49 F 2d 177 (CA 8th Cir) (1931).

"To be sure, the jury should pass upon each case free from external causes tending to disturb the exercise of deliberate and unbiased judgment." United States v Sorcey, 151 F 2d 899 (CA 7th Cir) (1945). See also Smith v United States, 238 F 2d 925 (CA 5th Cir) (1956).

In the present case it does not appear open to question but that the actions of the president improperly influenced the other members of the court-martial. We note his intemperate language addressed to individual civilian defense counsel, the mistake inherent in his statement that "There is a difference between civilian trials and military trials," and also the impropriety of his conversation with the other court-martial members during a court recess on the subject of impugnment of his military honor. His unbridled outburst demonstrated so completely his lack of judiciousness as to deprive the court-martial of that judicial caliber demanded by the Code. In short, as a result of his course of conduct, the court-martial became incapable of receiving a plea of either guilty or not guilty.

In United States v Richard, 7 USCMA 46, 21 CMR 172, we held it to be an abuse of discretion to deny a defense motion for mistrial when the accused had been improperly and grievously injured by the actions of a court-martial member. In the present case the defense motion for a mistrial should have been granted.

II

The second issue puts into inquiry whether the accused was prejudged by the law officer's curtailment of the *voir dire* examination. In United States v Parker, 6 USCMA 274, 19 CMR 400, we said:

"When a member is examined with a view to challenge, it is to be remembered that he may be asked any pertinent question tending to establish a disqualification for duty on the court. Statutory disqualifications, implied bias, actual bias, or other matters which have some substantial and direct bearing on an accused's right to an impartial court, are all proper subjects of inquiry. The accused should be allowed considerable latitude in examining members so as to be in a position intelligently and wisely to exercise a challenge for cause or a peremptory challenge. Accordingly, when there is a fair

doubt as to the propriety of any question, it is better to allow it to be answered. While materiality and relevancy must always be considered to keep the examination within bounds, they should be interpreted in a light favorable to the accused."

In United States v McMahan, 6 USCMA 709, 21 CMR 31, we stressed the importance of a *voir dire* examination in acceptable trial strategy. See also Morford v United States, 339 US 258, 70 S Ct 586, 94 L ed 815.

The question put to the president of the court-martial by the defense, far from being hypothetical, in effect summed up the offenses of which the accused stood charged.

Consequently, we hold that the law officer committed prejudicial error by his curtailment of the *voir dire* examination.

### III

The last issue questions, in the event the second is answered in the affirmative, whether the error was cured by the action of the board of review.

It is obvious that when we are confronted with a prejudiced court, there is no way to cure its action with regard to sentence except by wiping it out entirely. It is so because it is impossible to say at what sentence an unprejudiced court would have arrived. While we have condoned boards of review curing prejudice within limitation, it is obvious that those bodies cannot impose sentences *de novo*.

We hold that the board of review failed to purge the error in the present case. Consequently, the decision of the board of review is reversed. The record of trial is returned to The Judge Advocate General of the Army for action consistent with this opinion. A rehearing may be ordered.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

This opinion leaves me confused because I do not understand what disposition is being ordered. While I believe a rehearing on the sentence will better serve the ends of justice, I cannot concur with the concept that the court-martial was without jurisdiction to accept a plea of guilty. The guilt of the accused was never placed in issue, and the ill-advised conduct and comments of the president could affect only the sentence.

I would, therefore, limit the rehearing to the imposition of sentence.