UNITED STATES, Appellee

v

JAMES R. CZERWONKY, Private,
U. S. Marine Corps, Appellant

13 USCMA 353, 32 CMR 353

*Lieutenant Colonel A. M. Hearn*, USMC, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Earl Munson*, USNR.

*Commander Carl B. Klein*, USNR, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Commander Leo F. O'Brien*, USN.

## Opinion of the Court

QUINN, Chief Judge:

This is an appeal from a conviction by general court-martial for several offenses, including robbery, in violation of Article 122, Uniform Code of Military Justice, 10 USC § 922. The accused contends that a remark by a court member, during a closed session conference with the law officer for the purpose of putting the findings in proper form, indicates the member had prior knowledge of a matter concerning the accused which he should have disclosed during the challenge proceedings at the start of the trial.

Eliminating remarks immaterial to issue before us, the colloquy between the law officer and the court members on the form of findings is as follows:

"LO: . . . Check me now and see if this is what you've turned up. 'Private CZERWONKY, it is my duty as president of this court to inform you that the court in closed session and upon secret written ballot, two-thirds of the members present at the time the vote was taken, concurring in each finding of guilty finds you of the specification Charge I, guilty.' It's also got to say; and Charge I.

"PRES: Specification 1 of Charge II rather. . .

"LO: Of specification 1, Charge II, guilty and Charge II, guilty and of the specification and additional charge, guilty.

"PRES: Of the charge, guilty.

. . . . .

"LO: And then, of Charge I, guilty and then back up to Charge II.

"PRES: Do we all agree?

"MEMBER: I think that he's a PFC though. He's a PFC.

"MEMBER: No, he's a private. He was busted at office hours."

Appellate defense counsel contend the court member's comment that the accused had been "busted at office hours" indicates he had prior knowledge of the accused's involvement in a criminal offense which he should have disclosed on the *voir dire* examination. See United States v Schuller, 5 USCMA 101, 17 CMR 101. Since there was no disclosure, the argument continues, the accused was deprived of the right to challenge the court member for cause. See United States v Lynch, 9 USCMA 523, 26 CMR 303. The argument rests on an unarticulated assumption that the comment was predicated solely on the members private knowledge of the incident.

At the outset, we reject the accused's suggestion that the unidentified court member deliberately concealed knowledge of the fact that he knew the accused had been reduced in grade at "office hours." The *voir dire* of the court members shows a genuine effort on their part to reveal all information they had that might bear upon the case. A copy of the charge sheet was given to each court member. After reading it, one member immediately noted he recognized the names of two persons mentioned in the specifications. These persons were members of the same battalion to which he was assigned, and he knew them "by sight." Another mem-

ber indicated that when in Japan he had heard about the case, but he "knew nothing about the individual involved." After full examination, both members were accepted by defense counsel. Also important to the charge of deliberate concealment is the nature of the alleged knowledge. It relates merely to official action of a relatively minor nature. See Article 15, Uniform Code of Military Justice, 10 USC § 815. It is not, therefore, the kind of information that would induce a member to conceal his knowledge of it for fear of being challenged for cause. See United States v Washington, 8 USCMA 588, 25 CMR 92; United States v Edwards, 4 USCMA 299, 15 CMR 299; cf. United States v Schuller, supra.

So far as inadvertent silence is concerned, the record of trial contains matter from which reasonably ■■■■■■■ it can be concluded the statement was based on what the member had heard in open court, rather than upon his prior knowledge.[1] The specification of Charges I and II described the accused as a Private First Class. These offenses were alleged to have occurred on March 19, 1961. The specification of the Additional Charge described the accused as a Private; that offense, escape from confinement, was allegedly committed on May 21, 1961. As previously noted, a copy of the charge sheet was given to each court member. On the arraignment, the accused was described as a Private. In the course of the trial, evidence was introduced to the effect that the accused and other persons appeared before their commanding officer in May 1961 and were informed that "they would be placed in the security area at Camp Hansen, Okinawa, for violations of the Uniform Code of Military Justice." Persons sent to the security area were "liberty risks," whom the commander believed should be detained in camp. The commander gave the accused's rank as Private. Before his appearance before the commanding officer, the accused had not been allowed to go on liberty. These circumstances reasonably justify the conclusion that between March 19 and May 21, 1961, the accused had been reduced in grade. They also suggest the reduction was prompted by some action of the accused which required that he be disciplined, but that the misdeed was minor and was disposed of at office hours, rather than by court-martial. In our opinion, therefore, the record of trial indicates the member's comment was based upon matters presented in open court, and does not support the accused's allegation that the member possessed previous knowledge that the reduction was effected at office hours.

In any event, even if, in fact, the court member had prior knowledge that the accused was reduced at ■■■■■■■ office hours, we perceive no possibility that the knowledge, and the member's disclosure of it in closed session, prejudiced the accused as to either the findings or the sentence. We are not informed of the exact nature of the misdeed that led to the accused's reduction, but since it resulted only in "office hours" punishment, manifestly it was no more than a very minor wrong. Knowledge of a minor act of misconduct in a prosecution for a serious crime is not likely, in the absence of other circumstances, to make so indelible an impression on the court members as to prejudice them in their deliberations on the accused's guilt or innocence or in their imposition of sentence. One of the offenses of which the accused was tried and convicted in this case is robbery. Referring to the relation between that crime and a "simple delinquency," we have said:

". . . If the previous misconduct appears to be 'a simple delinquency,' and the offense charged is substantially different in character and in the degree of seriousness, it is im-

---

[1] This conclusion serves to explain the law officer's failure to reopen the case to acquaint defense counsel with the member's remark and to give the defense an opportunity to challenge the member. Throughout the trial the law officer was alert to the accused's rights. It is probable, therefore, that he understood the member's remark to be based upon the evidence, and to be in accord with his own recollection of it.

probable that evidence of the former would persuade the court members that the accused was more likely to commit the latter than would a person whose earlier conduct was irreproachable. United States v Thomas, 6 USCMA 92, 19 CMR 218; cf. United States v Kelley, 7 USCMA 584, 23 CMR 48; United States v Richard, supra. It is hardly disputable for example, that a conviction for failing to maintain clean boots, in violation of Article 134 (see Manual for Courts-Martial, United States, 1951, paragraph 127(c), Section A, page 227), would have no measurable significance in a case in which the accused is charged with aiding the enemy, in violation of Article 104, Uniform Code of Military Justice. Here, the accused was charged with robbery, an offense which all persons know to be a very serious crime. What of the accused's earlier conduct? . . .

"From the Colonel's remarks, we do not know the nature of the accused's misconduct. However, it seems clear that his transgressions were relatively minor. The reference to 'disciplinary punishment,' in conjunction with the comment on the accused's work for the Colonel as a 'prisoner,' gives a distinct impression that the accused's previous misdeeds were 'simple delinquencies.' . . .

"The record of trial clearly indicates that the Colonel's comments on the accused's previous misconduct did not make an indelible impression upon other court members. Considering that fact, in conjunction with the testimony of the remaining members that they would impartially judge the case upon the basis of the evidence, we are of the opinion that there is no fair risk that the Colonel's statements prejudiced the other court members against the accused. United States v Stewart, 1 USCMA 648, 5 CMR 76." [United States v Washington, 8 USCMA 588, 590, 25 CMR 92.]

The decision of the board of review is affirmed.

Judge KILDAY concurs.

FERGUSON, Judge (dissenting):

I dissent.

Seldom have I seen a more speculative attempt to explain away error apparent on the face of a record. The question before us is not whether the court member was in fact disqualified or whether he deliberately concealed his knowledge of the accused's past but whether the matter should have been made known to defense counsel in open court in order that it might be properly explored. As the basis for the comment and its possible effect on the member in his deliberations on the findings and sentence remains shrouded in doubt, I would set aside the findings and sentence. As my brothers conclude otherwise—and, in my view, quite without foundation in law or fact—I must record my disagreement with the result which they reach.

Brought before a general court-martial upon charges of robbery, two assaults with a dangerous weapon,[1] and escape from lawful confinement, in violation, respectively, of Articles 122, 128, and 95, 10 USC §§ 922, 928, and 895, the accused was found guilty and sentenced to dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for five years. The convening authority set aside the findings of guilty of escape from confinement and reassessed the sentence, approving only so much thereof as provided for bad-conduct discharge, forfeiture of all pay and allowances, and confinement at hard labor for three years. The board of review affirmed, and we granted accused's petition upon an assignment of error dealing with the reference by an unidentified court member to the purported reduction of the accused.

At the outset of the trial, counsel for the United States noted that the records of the case disclosed no ground for challenge and stated:

---

[1] The law officer dismissed one specification of assault with a dangerous weapon on the basis of multiplicity of the charges.

356

". . . If any member of the court or the Law Officer is aware of any facts which he may believe may be grounds for challenge by either side against him should now state such facts."

There was no response by the court members or the law officer to this inquiry.

Defense counsel conducted an extensive *voir dire* examination prior to determining whether to exercise his right to challenge. There was no answer from the court to questions involving whether any member "is familiar with or knows the accused"; or "[has] heard any discussion whatsoever concerning this case." Subsequently, a court member, after reading copies of the charges and specifications distributed by the trial counsel, stated that the alleged victims were members of his battalion. Another member then volunteered that he had "heard about this case." After further questioning, defense counsel indicated his acceptance of both as jurors.

In substance, the evidence before the court-martial tended to establish that the accused, in company with other Marines, on March 19, 1961, assaulted two noncommissioned officers in Takigahara, Japan, with his feet and a plaster cast in which his arm was encased. One victim's wallet was taken. Other evidence established that accused was detained in a so-called "security area" at Camp Hansen, Okinawa, as a "liberty risk," and departed therefrom without authority on May 21, 1961.

Following instructions by the law officer, the court retired to deliberate upon accused's guilt or innocence. After arriving at their findings, the members called the law officer into closed session to place them in proper form. In reading the proposed form of verdict to the court, the law officer provoked the following colloquy:

"PRES: Do we all agree?

"MEMBER: I think that he's a PFC though. He's a PFC.

"MEMBER: No, he's a private. He was busted at office hours.

"LO: Well, Gentlemen, we'll recall the court, the counsel rather."

Upon reconvening, the court-martial announced its findings of guilty and the presentencing proceedings were had. At no time was the defense made aware of the comment of the court member.

The right to challenge members of a court-martial is an important part of military due process. United States v Clay, 1 USCMA 74, 1 CMR 74. When the right is infringed by denial of an opportunity to examine a court member on *voir dire,* prejudicial error is committed. United States v Lynch, 9 USCMA 523, 26 CMR 303. And, in order to assist in the effective exercise of the right to challenge, the President, under the authority granted him by Congress in Uniform Code of Military Justice, Article 36, 10 USC § 836, has promulgated a rule of procedure which requires the affirmative disclosure by court members of knowledge on their part which might constitute a ground for their disqualification. Manual for Courts-Martial, United States, 1951, paragraph 62*b.*

In United States v Schuller, 5 USCMA 101, 17 CMR 101, we were confronted with the failure of the law officer or trial counsel to disclose that the former had previously acted in the case as staff judge advocate. A majority of the Court, Judge Latimer dissenting, ordered reversal, pointing out that "under the Manual, trial counsel and the law officer have an affirmative duty to disclose any ground for challenge which may exist." United States v Schuller, supra, at page 105. In United States v Washington, 8 USCMA 588, 25 CMR 92, we reaffirmed our decision in the *Schuller* case, the Chief Judge declaring for a unanimous Court, at page 590:

"An accused is entitled to be tried by an impartial court. United States v Dean, 5 USCMA 44, 17 CMR 44. *To that end, a court member must disclose any ground which might disqualify him from sitting. Manual for Courts-Martial, United States, 1951, paragraph 62(b); United States v Richard, 7 USCMA 46, 50, 21 CMR 172.*" [Emphasis supplied.]

Turning to the transcript, we find, as noted above, that the court members upon *voir dire* examination disclaimed

by their silence any knowledge or familiarity with the accused and denied hearing "any discussion . . . concerning this case." After the precise charges were made known, one member recognized the names of the victims and another declared that he had heard of the incident. Still, no one disclosed any information concerning the accused or his background. Yet, in the subsequent closed session discussion of the form of the findings, a member volunteered his knowledge that accused had been reduced to the grade of private and that such action had taken place under the provisions of Code, supra, Article 15, 10 USC § 815. Despite the member's previous silence concerning any relationship with the accused, the law officer took no action on the record to bring the matter to the attention of accused and his counsel in order that further inquiry might be made in the matter. Hence, the situation before us is one in which the defense—deliberately or otherwise—was kept in ignorance of the existence of possible disqualifying facts. United States v Schuller; United States v Washington, both supra.

True it is that the mere knowledge of an accused's previous punishment under Code, supra, Article 15, is not *per se* a reason to sustain a challenge for cause. We found as much in the *Washington* case, supra. The point is that the existence of such knowledge on the part of a member—previously concealed on *voir dire*—indicates that he may have been aware of other facts in connection with the accused which he also failed to make known during the challenging process. If it had been brought to the attention of defense counsel, inquiry could have been made and the matter settled. The failure by the member and the law officer so to make the information available kept counsel in ignorance and effectively prevented exercise of the accused's right to conduct a further *voir dire*. United States v Schuller; United States v Lynch, both supra. Thus, the matter was completely foreclosed without reference to the parties most interested in it. Cf. United States v Bruce, 12 USCMA 410, 30 CMR 410; United States v Caldwell, 11 USCMA 257, 29 CMR 73.

**358**

Moreover, had the information been made available to the accused at the proper point in the trial—if it was in fact concealed by the member in question upon the defense inquiry into his knowledge of the accused and the case—action with respect to the exercise of his peremptory challenge might well have been different. Proper disclosures on *voir dire* are equally important to the use of this right and, although the knowledge thus divulged does not constitute a ground for a challenge for cause, it will frequently dictate the choice of the member to be eliminated without assigning a reason. United States v Parker, 6 USCMA 274, 279, 19 CMR 400, 406.

It is for these reasons that I believe reversal is compelled. The author of the principal opinion may be correct when he stated that the member might have deduced the fact of reduction from the differing grades shown in the charge sheet, but the record is certainly silent as to such having been accomplished at "office hours." And the opinion surely errs in concluding that the member could infer the use of nonjudicial punishment from accused's appearance before his battalion commander and detention in the "security area," for the witnesses made it quite clear that the "appearance" and detention were not in connection with criminal proceedings but because accused and certain other Marines were deemed "liberty risks." Indeed, the accused could not be placed in confinement under the mentioned Article, for he was not "a person attached to or embarked in a vessel." Code, supra, Article 15.

In any event, these considerations are really immaterial. The court member could have as easily obtained his information from sources outside the court and have been aware of enough of accused's background and prior conduct to render his disqualification imperative. The law officer's failure to disclose what he had learned in the closed session effectively foreclosed a defense examination of the issue, and we are left nothing but conjecture and speculation upon which to build our view of the member's sources. In good con-

science, I cannot join in an opinion so predicated.

I would reverse the decision of the board of review and order a rehearing.