UNITED STATES, Appellee

v

FREDERICK W. LEWIS, JR., Airman Second Class, U. S. Air Force, Appellant

16 USCMA 145, 36 CMR 301

No. 19,084

March 18, 1966

Lieutenant Colonel Andrew S. Horton argued the cause for Appellant, Accused. With him on the brief were Colonel Joseph Buchta and Lieutenant Colonel Joseph B. McMullin.

Major Thomas J. Connolly argued the cause for Appellee, United States. With him on the brief was Colonel Emanuel Lewis.

## Opinion of the Court

FERGUSON, Judge:

Arraigned and tried before a general court-martial convened at McChord Air Force Base, Washington, the accused was found guilty of four specifications of forgery and three specifications of larceny, in violation of Uniform Code of Military Justice, Articles 123 and 121, 10 USC §§ 923, 921, respectively. He was sentenced to bad-conduct discharge, total forfeitures, confinement at hard labor for two years, and reduction. The board of review set aside the findings of guilty of one of the forgery counts and one of the larceny counts and ameliorated the adjudged confinement to eighteen months. Otherwise, it affirmed. We granted accused's petition for review on the issues whether the law officer erred in denying a motion for mistrial and whether he should have ordered an out-of-court hearing to consider matters presented concerning a defense motion to dismiss the charges. Both questions revolve around the same unfortunate portion of the trial, and we consider them together.

From the outset of the trial, it became apparent that personal antagonism existed between accused's individual counsel, Colonel J——, a retired Army judge advocate officer, and trial counsel, Lieutenant Colonel B——, a senior Air Force judge advocate who was also the staff judge advocate of accused's base, albeit not of the officer exercising general court-martial jurisdiction. The matter seems to have arisen from the fact accused was originally arraigned on one of the charges against him in the local civil courts,[1] and was there assigned the defense counsel who also represented him during his court-martial. J—— originally pleaded accused guilty, but represented to the trial judge that, although the latter suspended sentence, the Air Force intended to discharge accused administratively on account of the civil conviction rather than further to prosecute

him. After some colloquy, the judge suggested withdrawal of the plea and, with the consent of the prosecutor, dismissal of the charge. This procedure was followed, and accused was returned to his unit.

From the record, it may be fairly said that Lieutenant Colonel B—— became somewhat upset at this turn in events. Accused was placed in pretrial confinement. Over B——'s objections, as staff judge advocate, Colonel J—— secured his release through the local commander. Charges were preferred and drafted with B——'s assistance. One of B——'s subordinates was appointed pretrial investigating officer. B—— accompanied him in a successful effort to obtain the voluntary appearance of a material witness and gave him advice concerning the conduct of the investigation. When the charges were forwarded with a recommendation for trial by general court-martial, B—— volunteered his services as trial counsel.

Throughout these proceedings, it is clear that ill feelings had continued to grow between B—— and J——, who had remained as accused's counsel in the military prosecution. They came to a head at the trial when defense counsel sought a dismissal of the charges and removal of B—— on the grounds of his personal injection into the case and hostility towards the accused. A sense of charity dictates that we note the antagonism existed between counsel and if directed at all towards accused, such resulted only from the fact that he, incidentally, was J——'s client.

We need not detail the bitter exchanges between these mature members of the bar, whose experience should have taught them better. Many of these took place in the presence of the court, others in brief out-of-court conferences. On one occasion, trial counsel referred, before the court members, to the fact that, had he been biased, "I could easily have added another 20 or 25 years worth of

---

[1] This is the forgery count dismissed by the board of review.

charges to this charge sheet." A motion for mistrial, based on this comment, was overruled. Both counsel testified with respect to their pretrial activities. Accused's previous plea of guilty in the civil courts was paraded before the members. Defense counsel also informed them of his unsuccessful attempt to negotiate a plea of guilty with Colonel B—— as to the charges on which accused was now being tried.

During a recess and in the courtroom, trial counsel allegedly referred to defense counsel as a "two-bit piece of cat meat" who "came out here with a crawling Army negotiation deal and when . . . I would not agree . . . threatened to smear me from one end of the Air Force to the other." The record is unclear as to whether this occurred in the presence of the members of the court. Trial counsel conceded he used "substantially the language that the gentleman charges," but claimed he, at the same time, was called "a 'damn liar'."

In open court and while testifying, trial counsel charged defense counsel with an attempt "to smear me as an individual and the Air Force in general." In turn, he accused Colonel J—— of unethical and improper pretrial conduct. We must say that defense counsel, not to be outdone, repeatedly made similar allegations concerning the trial counsel.

Additional instances might be cited *ad infinitum*. Suffice it to say the foregoing are a fair sampling of a controversy which occupies almost fifty pages of the transcript. Accused's naive declaration in a post-trial interview that, while he was well satisfied with his attorney, "he thought the defense counsel and trial counsel at times became more concerned with 'hammering' at each other than with his behalf" is a classic understatement of the picture presented to us.

The board of review was likewise concerned by the raging exchanges between counsel and whether the disclosures involved denied the accused a fair trial, but thought any prejudice therefrom was limited to the charge of forgery involved in the civil court proceedings. It accordingly dismissed this count. We believe it misapprehended the extent and depth of the matter.

An accused has no more basic right than that of a fair trial. United States v Shepherd, 9 USCMA 90, 25 CMR 352. The guarantee of such a hearing is the whole purpose of the Uniform Code. And when unbridled outbursts and exchanges establish a complete lack of judiciousness, they serve "to deprive the court-martial of that judicial caliber demanded by the Code." United States v Lynch, 9 USCMA 523, 526, 26 CMR 303, 306. It is the law officer's duty to prevent such misconduct, see that the trial is conducted in an orderly manner, and that irrelevant and prejudicial matter is kept from the attention of the fact finders. United States v Burse, 16 USCMA 62, 36 CMR 218; United States v Lynch, supra. As was said in United States v Jackson, 3 USCMA 646, 14 CMR 64, at page 652:

". . . The law officer is not a mere figurehead in the courtroom drama. He must direct the trial along paths of recognized procedure in a manner reasonably calculated to bring an end to the hearing without prejudice to either party. . . . A law officer must exercise control. . . ."

Here, the law officer failed to keep counsel within proper limits. He suggested an out-of-court hearing from time to time; he admonished the court to disregard some of the material it heard; but, though it was plainly apparent that both attorneys had far exceeded the bounds of propriety, he did not act positively to end the matter, keep them in proper bounds, or above all, to prevent the court members from hearing a mass of information which could only serve to deprive the accused of a fair hearing. Cf. United States v Lynch, supra; United States v Dicario, 8 USCMA 353, 24 CMR 163; United States v Lock, 13 USCMA 611, 33 CMR 143. Under the circumstances here presented, the like of which we hope not to

see again, we believe it an abuse of his discretion to have permitted these matters to be so lengthily aired in open court.

In like manner, neither he nor counsel for either side can escape our censure for permitting certain of the occurrences, which we have particularized above. Thus, counsel, without withdrawing from the case, were permitted to testify at length concerning matters with which the court members had no concern. We have condemned the practice repeatedly. United States v Stone, 13 USCMA 52, 32 CMA 52, and cases cited therein. See also Canon 19, Canons of Professional Ethics, American Bar Association. References were made to accused's attempted negotiation of a plea of guilty to the charges for which he was being tried, though our cases make it clear such matters should not be brought to the attention of the fact finders. United States v Robinson, 13 USCMA 674, 33 CMR 206; United States v Butler, 9 USCMA 618, 26 CMR 398; United States v Palacios, 9 USCMA 621, 26 CMR 401. And see United States v McFarlane, 8 USCMA 96, 23 CMR 320. We have also condemned adduction of evidence of misconduct not charged. United States v Back, 13 USCMA 568, 33 CMR 100; United States v Bryant, 12 USCMA 111, 30 CMR 111; United States v Hoy, 12 USCMA 554, 31 CMR 140. Yet, it was here shown in the course of the controversy between counsel.

Indeed, all these things occurred, and more. Together, they not only justify accused's observation that counsel, in their zeal to attack each other, somehow overlooked him, but severally constitute the denial to him of a fair hearing. United States v Lynch, United States v Shepherd, both supra. We cannot condemn too severely the acrimonious exchanges in this record in counsel's effort to blacken each other's reputation before court members who had not the slightest official interest therein. The law officer should have acted immediately and firmly to control the matter. His failure to do so led inevitably to the disclosures we have mentioned, and, in turn, to this reversal. United States v Lynch, supra; United States v Burse, supra.

The decision of the board of review is reversed, and the record of trial returned to The Judge Advocate General of the Air Force. A rehearing may be ordered.

Chief Judge QUINN and Judge KILDAY concur.