UNITED STATES, Appellant and Cross-Appellee

v

JOHN A. MELLA, JR., First Lieutenant, U. S. Army,
Appellee and Cross-Appellant

17 USCMA 122, 37 CMR 386

No. 19,887

June 30, 1967

*Captain Robert E. Davis* argued the cause for Appellant and Cross-Appellee, United States. With him on the brief were *Colonel Peter S. Wondolowski, Lieutenant Colonel David Rarick,* and *Captain William R. Steinmetz.*

*Captain Stephen Arinson* argued the cause for Appellee and Cross-Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Captain Paul V. Melodia,* and *Captain Frank J. Martin, Jr.*

## Opinion of the Court

QUINN, Chief Judge:

On the accused's plea of guilty, a general court-martial convicted him of three specifications of larceny of Gov-

ernment money and four specifications of violating a general regulation controlling possession and use of United States currency in the Republic of Vietnam, under Articles 121 and 92, Uniform Code of Military Justice, 10 USC §§ 921 and 892, respectively. It imposed a sentence which included dismissal, confinement at hard labor for two years, and a fine of $3,000.00. The convening authority approved the findings of guilty and the sentence, with some modification of the confinement. Thereafter, a board of review reduced the larceny findings of guilty to the lesser offense of wrongful appropriation. It also determined that improper argument by defense counsel substantially prejudiced the accused as to the sentence.

Pursuant to the provisions of Article 67(b)(2), Code, supra, 10 USC § 867, the Judge Advocate General of the Army certified the following questions for review:

1. Was the board of review correct in finding only so much of the findings of guilty of Charge I and each of its three specifications as finds the appellant guilty of wrongfully appropriating United States currency of the ownership and amount described and at the time and place alleged correct in law and fact?

2. Was the board of review correct in finding the sentence incorrect in law and fact and ordering a rehearing thereon?

The accused also petitioned for review on certain assignments of error challenging the procedure of the law officer in placing him under oath, before examining him as to the voluntariness of the plea of guilty and his understanding of its meaning and effect. Since the issues were pending decision in another case, we granted the petition. Those issues were decided against the accused. United States v Simpson, 17 USCMA 44, 37 CMR 308.

The factual background of the first certified question is simple. The accused was a Class "A" Finance Agent. Part of his responsibility was to issue military payment certificates to American military personnel, arriving in the Republic of Vietnam, in exchange for United States green currency in their possession. The exchange was required by regulation, and was effected on a one-for-one basis, that is, one dollar of currency was exchanged for a certificate of like denomination. However, in the Vietnam black market, green currency had a much higher valuation than military payment certificates; and black-market operators gave many more certificates for green currency than could be obtained at the finance office. Acting in concert with others, the accused took green currency from the fund entrusted to him and exchanged it on the black market for certificates, at the black-market valuation. He placed a sufficient number of black-market certificates into the fund to cover the amount withdrawn in currency. As a result, the books of account balanced as to dollar amounts, according to the rate of exchange established for the finance office, but accused realized a profit of about thirty-five per cent in each transaction. When the scheme came under investigation, his personal gain aggregated about $8,000.00. It was stipulated that at all times the accused intended to replace green currency withdrawn from the fund with an equal, face amount of military payment certificates.

The board of review took the position that green currency and military payment certificates were equal money equivalents; and it regarded the substitution of certificates for currency as an equal exchange of legal tender, on the order of changing a ten-dollar bill for two fives. See United States v Hayes, 8 USCMA 627, 25 CMR 131. This equation of use and value led the board of review to conclude that, since the prosecution conceded the accused always intended to replace green currency with a like amount of certificates, the intent to deprive the Government permanently of its property, which is required for a finding of guilty of larceny, was not established. It, therefore, determined that the plea of guilty to larceny was inconsistent with the established facts; and it

**123**

modified the findings of guilty to conform to the evidence.

At the time of the board of review's decision, we had not yet decided United States v Matoka, 16 USCMA 608, 37 CMR 228. In that case, we examined the regulations governing the possession of United States currency and the use of military payment certificates in Korea. We noted that, while green currency was convertible by military personnel arriving in Korea into military payment certificates upon a one-for-one or face value basis, the two instruments were not legal tender equivalents. In fact, in areas where certificates are used as a medium of exchange for American military personnel, green currency is not really legal tender. The regulations require that all currency be converted into certificates; and if acquired while within the country, currency must be exchanged for certificates. The regulations for the Republic of Vietnam contain substantially similar provisions. It is apparent that currency and military payment certificates are not identical in nature. Nor are they, as the transactions in this case establish, identical in value.

Manifestly, the accused's conversions were not exchanges of money of equal quality; nor are "greenbacks" and certificates fungible equivalents. Reduced to its simplest terms, what the accused did was to take an article of a specified value, and substitute for it an article of less value. According to the stipulation of facts, he appropriated to himself at least the difference in value between the two articles. That is larceny. In our opinion, therefore, the stipulation is not inconsistent with the accused's plea of guilty to larceny. Accordingly, we answer the first certified question in the negative. We reverse the decision of the board of review, as to the findings of guilty of the specifications of Charge I, and reinstate the findings of guilty approved by the convening authority.

Since the accused pleaded guilty to all the charges, it was apparent from the outset of the case that the entire defense would focus on the sentence.

Substantial mitigating evidence was presented to show the accused was deserving of the lenity of the court-martial. Among other things, his battalion commander testified he was an "excellent" officer; that he had been "extremely cooperative" in the investigation; and he had voluntarily turned over to the Government a large amount of currency, which included a substantial part of his personal profit from the exchange transactions. The commander further testified he "sincerely" felt the accused had "learned a lot." In his own behalf, the accused reviewed the circumstances of his involvement in the offenses. He said he knew he had "learned a lesson," and he pleaded for "another chance." However, in arguing for a sentence to "fit both the offender and the crime," defense counsel, in part, said:

"The possible punishments available in this case are: a dismissal from the service, confinement at hard labor, total forfeitures and a possible fine. A fine signifies a pecuniary liability to the United States. It is usually adjudged to prevent unjust enrichment.

"A dismissal is a severe punishment and causes considerable harm to the reputation of the individual who receives it. Moreover a dismissal deprives the recipient of all but a few of the benefits normally extended to discharged persons and will follow a man throughout his life.

"*A fine, depriving Lieutenant Mella of any profit he may have received as fruits of the offense, and the severity of a dismissal fit both the crime and the offender in this case.* The addition of any long term of confinement would have a devastating effect on Lieutenant Mella and his family. Lieutenant Mella has a prior spotless record. His misconduct was caused by a temporary disregard of possible consequences when he was faced with loss of money in his Class 'A' agent's account and the pursuasiveness [sic] of his associates. There is no reason to believe that Lieutenant Mella requires confine-

124

ment to assure his rehabilitation to perform as a useful citizen. I recommend that any punishment imposed not extend to confinement." [Emphasis supplied.]

Analyzing defense counsel's argument in light of the accused's plea for "another chance," the board of review concluded that counsel had "conceded far too much," and thereby abandoned the accused. We agree. We set forth our views on this subject most recently in United States v Mitchell, 16 USCMA 302, 36 CMR 458, which was cited by the board of review. Suffice it to repeat a part of what we said in Mitchell, at pages 303–304:

"Defense counsel is an advocate for the accused, not an *amicus* to the court. Ellis v United States, 356 US 674, 2 L ed 2d 1060, 78 S Ct 974 (1958). This does not mean, of course, that he should knowingly present false evidence or that he should willfully distort the meaning of matters in evidence. However, he is obliged to marshal the evidence in the way most favorable to the accused. When the accused has entered a plea of not guilty, defense counsel should not concede away his innocence. United States v Walker, 3 USCMA 355, 359, 12 CMR 111; United States v Smith, 8 USCMA 582, 585, 25 CMR 86, footnote 2. No less can defense counsel argue for a severe punishment, when the accused himself pleads for mercy.

How shocking it would be, for example, for defense counsel to say the accused deserves the death penalty, when the accused has begged for his life. There may be cases in which the offense is 'so heinous or so repugnant to common decency' that all in the military would, at first thought, at least, believe the accused should be sentenced to a punitive discharge. United States v Fort, 16 USCMA 86, 89, 36 CMR 242. In such cases, it might perhaps be an allowable defense tactic to plead affirmatively only for leniency as to the period of confinement and accessory penalties. There is, however, a vast difference between a passive acceptance of the force of adverse facts and a positive declaration that a punitive discharge is appropriate, especially when the accused has personally pleaded that he be retained in the service. The law officer should have stopped defense counsel as soon as the implications of his argument became apparent and, out of the presence of the court members, should have cautioned him as to their effect. United States v Lewis, 16 USCMA 145, 36 CMR 301."

We answer the second certified question in the affirmative. The decision of the board of review as to the sentence is, therefore, affirmed. A rehearing of the sentence may be held on the basis of the affirmed findings of guilty.

Judges FERGUSON and KILDAY concur.