UNITED STATES, Appellee

v

OTIS R. SUTTON, JR., Private, U. S. Army, Appellant

15 USCMA 531, 36 CMR 29

No. 18,583

November 12, 1965

Captain *Francis R. Jones* argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph L. Chalk* and *Lieutenant Colonel Martin S. Drucker.*

Lieutenant *Colonel Francis M. Cooper* argued the cause for Appellee, United States. With him on the brief were *Colonel Edwin G. Schuck* and *Captain Charles M. Pallesen, Jr.*

FERGUSON, Judge:

Arraigned and tried before a general court-martial convened at Fort Ord, California, upon two charges of absence without leave, in violation of Uniform Code of Military Justice, Article 86, 10 USC § 886, and a single count of desertion, in violation of Code, supra, Article 85, 10 USC § 885, the accused pleaded guilty to one specification of unauthorized absence, not guilty to the other, and guilty only of absence without leave for the period involved in the desertion count. He was found guilty as charged and sentenced to bad-conduct discharge, forfeiture of all pay and allowances, and confinement at hard labor for two years. The convening authority reduced the period of confinement involved to fifteen months. The board of review, further reducing the imprisonment to one year, otherwise affirmed. We granted accused's petition for review upon three issues, which will be discussed *seriatim*.

I

The first question before us inquires whether the law officer erred prejudicially in not allowing the trial defense counsel to question accused's wife as to what he had related to her in regard to his intention to return to military control. The matter arose in the following manner.

The Government presented evidence that the accused absented without leave on the dates alleged and, with respect to the period of desertion involved, was apprehended by military authorities on September 14, 1964, in Inglewood, California. At the time, he was residing with his wife, and was dressed in civilian clothing. After proper warning, accused voluntarily stated he had been employed under his own name by various civilian concerns during his absence, had lost his identification card, but intended to return to the Army by surrendering at Fort Riley, Kansas. Accused also indicated he still possessed his Army uniforms. His residence was within a few miles of Fort MacArthur, California.

The defense opened its case, in answer to the Government's proof, by calling accused's wife to contest the "actual dates of the absence under . . . Specification 2 of Charge I," but declared, as to the desertion charge, "the defense will present no evidence, but will rest its case at this time." Nevertheless, defense counsel thereafter explored the circumstances of Sutton's alleged desertion by examination of his wife. During such questioning, the following transpired:

"Q. Why did he bring you to California?

"A. Well, to be near his parents when he went overseas so that I would have some way of somebody helping me.

"Q. Did you discuss this with him?

"A. Yes.

"Q. How often did you discuss this with him?

"A. Well, on the average we talked about once a week.

"Q. Were you ever of the opinion that he was a deserter from the United States Army?

"A. No.

•  •  •  •  •  •

"Q. Was he intending to return, or had you discussed it with him prior to his apprehension?

"A. Yes, sir. The day before.

"TC: Objection sir. What his intent would be would be hearsay on her part, and a result of a self-serving declaration on the second point. I object to her testimony.

"LO: Sustained.

"DC: Sir, the question was: I asked if she had discussed it with him.

"LO: Are you asking me to reconsider or are you asking another question?

"The reporter will read back the question.

"(Reporter read the requested question.)

"LO: I reconsider my ruling and adhere to it, you can do whatever you want to. Either restate your question or—as you wish.

"*Questions by the Defense (Continued):*

"Q. Mrs. Sutton, did you discuss with your husband about returning prior to his apprehension?

"A. Yes, I did.

"Q. And when did you discuss it with him?

"A. A week before that.

"Q. And were you of the opinion that—

"TC: Objection.

"LO: Well, now, Mrs. Sutton, do not answer any question to which there is an objection unless I indicate that you should do so. However, in order to know whether I should rule one way or the other I have to determine the whole question.

"Do you want to state your complete question now, Captain Crow and then I'll hear whether there is an objection to the question.

"DC: Would the reporter read the question?

"(Reporter read the requested question.)

"DC: I'll withdraw the question and start again.

"LO: Go ahead."

Thereafter, defense counsel explored the circumstances of accused's move with his family to California; partial liquidation of their indebtedness; accused's employment during his absence; his use of his own name; Mrs. Sutton's lack of objection to his returning to the Army; and the fact she favored his military career "if that's what my husband really wants."

Appellate defense counsel urge the law officer, by reason of his rulings on the trial counsel's objections, foreclosed any inquiry by trial defense counsel into what had been related by the accused to his wife concerning his intention to return. Cf. United States v Bowen, 10 USCMA 74, 27 CMR 148,

**534**

and Manual for Courts-Martial, United States, 1951, paragraph 142*d*. We find no basis in the record for that conclusion.

Defense counsel's questions, to which trial counsel interposed objection, did not inquire into the content of accused's statements to his wife. As will be noted from the quoted portion of her testimony, the first such question posed the double inquiry whether accused intended to return or whether Mrs. Sutton had discussed the matter with him. While the law officer originally sustained the objection thereto, after the trial counsel alleged it called for a hearsay answer, he reconsidere' his ruling when the defense couns: made known he intended only to inquire whether the matter was discussed. Although he adhered to the original ruling, he suggested the question be rephrased and expressly left counsel free to do as he chose. And we note the original inquiry was in fact objectionable on the basis that it combined two inquiries in a single interrogatory. Manual, supra, paragraph 149*c*(2). Moreover, it called for the witness' statement of an opinion as to the accused's intent, a matter which even defense counsel later conceded was improper by withdrawing a similar inquiry. See Manual, supra, paragraph 138*e*. In short, we are unable to find any basis in the law officer's rulings for the contention that he foreclosed inquiry by defense counsel in any proper area. Accordingly, we turn to the next assignment of error.

## II

It is argued the law officer erred prejudicially in restricting defense counsel's *voir dire* of the court members. The record reveals the following exchange concerning this matter:

"DC: Defense would like to direct this question to Major Rizer.

"Major, if a reasonable doubt were raised in your mind, would you vote for a finding of guilty—

"LO: Well, I'll interrupt that question.

"On voir dire examination prelim-

inary to challenges, the members of the court-martial may be asked any pertinent question tending to establish a disqualification for duty on the court. Statutory disqualifications, implied or actual bias, or other matters which have some substantial doubt—I correct myself—which have some substantial and direct bearing on an accused's right to an impartial court as exercised through his challenges for cause, are proper subjects for inquiry. While counsel will be allowed considerable latitude, each will be expected to stay within the bounds which I have just indicated in asking any questions.

"Now, the question that you just put, Captain Crow, undertakes to go into the matter of what the law of the case will be. When this court gets ready to make its decision they must take the law from me. You do not know what the law is going to be as it applies to this case at this time, and consequently, I think that I will hold that this is not a proper question on voir dire.

"You may proceed within the limitations that I have indicated, but before you do so I turn to each member of the court and say that each of you should listen carefully to any question asked. If you do not understand the question you should say so. If you wish to enlarge any answer to a question calling for a 'yes' or 'no' to express yourself clearly, you should say so.

"You may proceed.

"DC: In view of the ruling by the law officer, the defense has no further questions of the court. The defense has no challenges for cause of the members of the court."

From its context, it is apparent the question which defense counsel was not allowed to put to the court members dealt not with the law of the case, as the law officer interpreted it, but with whether the officer would cast his vote for conviction contrary to the law, *i.e.*, when he possessed a reasonable doubt as to the accused's guilt.

The Government, relying on our de-cision in United States v Parker, 6 USCMA 274, 19 CMR 400, contends the law officer's interruption and exclusion of the question was well within his discretion and, hence, no prejudicial error occurred. On the other hand, appellate defense counsel, relying principally on the same case, purport to find abuse of the law officer's powers.

In the *Parker* case, supra, this Court dealt with a number of questions which the law officer refused to allow to be put on *voir dire* examination. As to one which inquired whether the members in general would convict despite existence in their minds of a reasonable doubt, the principal opinion notes "the law officer would have been wiser had he permitted them to be answered" but, after analysis of the authorities and the record before the Court, concluded there was no abuse of discretion on the law officer's part, in light of his strong instructions, the members' expressed lack of bias in the case, and the absence of any indication in the transcript that they disregarded the applicable standard in finding accused guilty. More importantly, the Court specifically noted, concerning such question, at page 282:

"Out of the welter of cases dealing with this subject—some of which we have mentioned—comes the general principle that each case must be separately analyzed to determine whether, under the issues, facts, and circumstances involved, the specific rulings were an abuse of discretion."

Thus, it will be seen *Parker*, supra, does not stand immutably for the principle that questions of the nature here put are always improper. Rather, the issue to be decided is whether, in excluding them, the law officer exercised a sound discretion. And that, in turn, depends upon an analysis of the issues, facts, and circumstances involved in the *voir dire*. United States v Parker, supra. Thus, while we found no abuse of discretion in *Parker*, supra, we did note it would have been wiser to have allowed them and specifically adverted to the defense counsel's special interest in other areas as indicative that he did not put his general queries seriously.

Moreover, in United States v Carver, 6 USCMA 258, 19 CMR 384, wherein we were confronted with a challenge of a court member who stated he " 'might' be inclined to 'bend over backwards' in favor of the prosecution," the Court declared a member to be disqualified:

". . . [W]hen he becomes so partisan as to be unwilling to accord to an accused the presumption of innocence and the benefit of reasonable doubt. . . . This conclusion follows, whether the court-martial member enters upon his duties with the view the defendant must prove himself innocent, State v Vogan, 56 Kan 61, 42 Pac 352 (1895); or that 'the accused must be guilty of something,' United States v Deain, supra; . . . or, as here, believing that doubts should be resolved in favor of the prosecution." [United States v Carver, supra, at page 264.]

Finally, we noted in United States v Deain, 5 USCMA 44, 17 CMR 44, the serious impairment of a member's impartiality when he believed an accused before a court-martial guilty of "something" and his refusal to accord him the full scope of the presumption of innocence until such was dispelled by proof of guilt beyond a reasonable doubt.

The teaching of these cases is clear. While an accused is not entitled to favorable court members or any particular kind of juror, he is guaranteed the right to fair-minded and impartial arbiters of the evidence. United States v Deain, supra, at page 50. When one is found to be willing to convict, though he entertains a reasonable doubt of guilt, he fails to accord the proper scope to the presumption of innocence and may be imbued with the concept that the accused must be blameworthy, else he would not stand arraigned at the bar of justice. And to those who doubt the existence of such beliefs on the part of some court members, we point to our decisions in United States v Carver and United States v Deain, both supra. See also United States v Squirrell, 2 USCMA 146, 7 CMR 22, dissenting opinion of Chief Judge Quinn. Thus,

it seems entirely proper for counsel to interrogate a member, as in this case, as to whether he entertains such beliefs and would convict despite a reasonable doubt of the accused's guilt. As we noted in United States v Parker, supra, allowing such question is, indeed, the wiser course, although in most cases, it is to be hoped the answer thereto would be emphatically negative.

Turning then to the particular facts and circumstances before us, the query is posed whether in this case the law officer abused his admittedly wide discretion in excluding defense counsel's question, or whether he acted within the ambit of his authority, as in *Parker*, supra. We are constrained to the conclusion that he here exceeded his power. Unlike the *Parker* case, counsel here made no general inquiries but addressed his question to a named court member, an interrogatory which was not only abruptly curtailed but apparently misunderstood by the law officer. Thus, he spoke of the issue as one inquiring into the law of the case, when it actually sounded the member's beliefs as to the need to apply the rule of proof of guilt beyond a reasonable doubt in order to convict. Moreover, in thereafter laying down guidelines for the conduct of any further *voir dire* examination, he improperly limited counsel to laying a foundation for possible challenge for cause, when, as we noted in United States v Parker, supra, such also is intended to furnish the accused with information regarding the exercise of his right to a peremptory challenge. Finally, having improperly judged the question as inquiring only into the law and compounded the error by limiting the scope of the *voir dire,* it seems to us that his caution to the court members concerning the nature of their answers to any questions put on the issue of challenges had the effect of indicating that counsel was attempting cleverly to entrap them. Taken as a whole, therefore, we think this case so completely unlike our decision in United States v Parker, supra, as to compel the conclusion the law officer here abused his discretion by arbitrarily curtailing accused's *voir dire* examination of the

member in question. We pass, therefore, to the third issue before us.

### III

The final question involves the law officer's instructions to the court concerning the accused's election to remain silent on the merits of the case. It was as follows:

"I must emphasize to you that in the trial of this case the accused had two alternatives open to him as an individual in presenting his case. That is, to remain silent or to testify in his own behalf. You must not draw any inference adverse to him at all because he elected to remain silent, as he had an absolute right to do this. *However, the defense has some burden in going forward with the evidence after the prosecution has proved an unauthorized absence and has adduced some evidence tending to support the conclusion that the accused did, at some time, entertain the intent to remain away permanently, if the defense wishes to avoid the adverse impact of inferences tending to support the allegations against the accused. Of course, this also may be done by means of developing favorable facts and inferences from the evidence and witnesses brought before you by the prosecution.*

"I emphasize as strongly as I am able, that the burden of proof does not shift to the accused to prove his innocence, as the burden of proof always remains with the prosecution of proving guilt beyond reasonable doubt, and failing this, it is your duty to make findings of not guilty as to the particular issue under consideration. In this connection you must consider the evidence and the inferences which tend to explain or account for the accused's actions, and these alone may be sufficient to raise a reasonable doubt." [Emphasis supplied.]

We have had occasion heretofore to deal indirectly with the problem involved. Thus, in United States v Farrington, 14 USCMA 614, 34 CMR 394, we approved, as sufficient among other things, to purge any prejudice from a court member's question concerning the right of an accused to testify, an instruction that the accused was not obligated to do so; that no comment could be made thereon; and that the court should remember he was represented by competent counsel. At the same time, we suggested the law officer would have been well advised "in addition to the instruction given, to have included the pertinent language of Title 18, United States Code, Section 3481," which provides, in essence, that the person charged, at his own request, shall be a competent witness, but his failure to make such request "shall not create any presumption against him." 18 USC § 3481, supra. Similarly, in United States v King, 12 USCMA 71, 30 CMR 71, when confronted with the question whether a court member's comment that " 'if he [accused] wants to remain silent it means something to me' " was prejudicial, we said, at page 73:

"A fair interpretation of the comment by the member shows that not only did he misunderstand and misstate the law, but that he was posing a threat if the accused elected to remain silent. Paragraph 75c(2) of the Manual for Courts-Martial, United States, 1951, provides that an accused may himself or by counsel make an unsworn statement. If he elects to follow this course, cross-examination is not permitted and court members are not allowed to interrogate him on the substance of the statement. *Accordingly, the member of the court placed the accused in a legal dilemma of yielding a substantial right or suffering consequences if he relied thereon. At no time during the course of the proceedings was the member correctly informed on the appropriate principle of law. Neither was he advised that he could not draw unfavorable inferences from accused's silence.*" [Emphasis supplied.]

The cited authorities make crystal clear our concern with the accused's right to remain silent and the rule forbidding comment thereon or the drawing of any inferences from his election to do so. See, particularly, United

**537**

States v Farrington, supra, and 18 USC § 3481, supra. See also United States v Brooks, 12 USCMA 423, 31 CMR 9; United States v Hickman, 10 USCMA 568, 28 CMR 134; and United States v Allinder, 9 USCMA 575, 26 CMR 355. As Judge Kilday succinctly stated for the Court in United States v Seay, 13 USCMA 540, 33 CMR 72, at page 544:

". . . Our position on proof or comment by the prosecution as to the accused's exercise of his right to remain silent is clear. In the language of Judge Hand, supra, such comments are clearly improper and are indeed to be deprecated. Clearly, prejudicial error may thereby be committed, and surely prosecuting attorney would never deliberately and maliciously parade such a fact before the triers of fact."

The same prohibition against comment applies to the law officer. United States v Allinder, supra. In that case, we said, at page 576:

"The law officer cannot comment upon the failure of the accused to take the witness stand. Paragraph 72*b*, Manual for Courts-Martial, United States, 1951. *Neither can he directly or indirectly indicate that the accused should or must testify.*" [Emphasis supplied.]

Turning to the case before us, the Government contends the instruction, taken as a whole, accurately states applicable principles of law; explains to the court members the concept of the burden of coming forward with the evidence; correctly points out the burden of proof remains on the prosecution; and that the accused has the absolute right to remain silent, with no inference to be drawn therefrom. It may be true the law officer squarely covered all these concepts in his advice, as set out above. It is equally clear that, though the law officer ▮▮▮▮▮▮ informed the court of the accused's right to remain silent, he also told it, in the same breath, that "the defense has some burden in going forward with the evidence" after the prosecution had proved an unauthorized absence and adduced some evidence to permit an inference of intent to desert, "if the defense wishes to avoid the adverse impact of inferences tending to support the allegations against the accused." While he added that this "*also* may be done" (emphasis supplied) by means of "developing favorable facts and inferences from the evidence and witnesses brought before you by the prosecution," it is apparent the instruction, taken as a whole, conveys the concept that, while accused has a right to remain silent, he does so at the peril of admitting the Government's case and that, if he wishes to explain away the unfavorable inferences which might be drawn therefrom, he would be well advised to do so.

Aside from the fact the instruction seems to equate a *prima facie* case for the Government plus the accused's silence to proof of guilt, despite the presumption of innocence, it is a blunt and forceful comment on the effect of accused's silence and a clear invitation to the members to throw such into the Government's pan on the scales of justice. It clearly implies unfavorable inferences may be drawn from the evidence if the silent accused has not elected to explain them away. Yet, that is the precise sort of comment which was forbidden by 18 USC § 3481, supra, in declaring the accused's failure to testify "shall not create any presumption against him."

Thus, in Wilson v United States, 149 US 60, 37 L ed 650, 13 S Ct 765 (1893), it was stated at page 66:

"But the Act was framed with a due regard also to those who might prefer to rely upon the presumption of innocence which the law gives to every one, and not wish to be witnesses. It is not every one who can safely venture on the witness stand though entirely innocent of the charge against him. Excessive timidity, nervousness when facing others and attempting to explain transactions of a suspicious character, and offenses charged against him, will often confuse and embarrass him to such a degree as to increase rather than remove prejudices against him. It is not every one, however honest, who would therefore

willingly be placed on the witness stand. The statute, in tenderness to the weakness of those who from the causes mentioned might refuse to ask to be a witness, particularly when they may have been in some degree compromised by their association with others, declares that the failure of the defendant in a criminal action to request to be a witness shall not create any presumption against him."

Moreover, in the same connection, the Supreme Court recently condemned an instruction similar to that now before us and struck down as unconstitutional a related California statute which purported to authorize such comments on the accused's election to remain silent. Griffin v California, 380 US 609, 14 L ed 2d 106, 85 S Ct 1229 (1965). In that case the trial judge advised the jury:

" 'As to any evidence or facts against him which the defendant can reasonably be expected to deny or explain because of facts within his knowledge, if he does not testify or if, though he does testify, he fails to deny or explain such evidence, the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable.' "

The judge also instructed the court no such inference could be drawn as to evidence respecting which the defendant had no knowledge and his failure to deny or explain the evidence of which he had knowledge did not create a presumption of guilt, warrant an inference of guilt, or relieve the prosecution of its burden of proof. In reversing, the Court stated, at page 612:

"If this were a federal trial, reversible error would have been committed. Wilson v United States . . . so holds. It is said, however, that the *Wilson* decision rested not on the Fifth Amendment, but on an Act of Congress, namely, 18 USC § 3481. That indeed is the fact, as the opinion of the Court in the *Wilson* case states. . . . But that is the be-

ginning, not the end, of our inquiry. The question remains whether, statute or not, the comment rule, approved by California, violates the Fifth Amendment.

"We think it does. It is in substance a rule of evidence that allows the State the privilege of tendering to the jury for its consideration the failure of the accused to testify. No formal offer of proof is made as in other situations; but the prosecutor's comment and the court's acquiescence are the equivalent of an offer of evidence and its acceptance. . . .

". . . . It is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly. It is said, however, that the inference of guilt for failure to testify as to facts peculiarly within the accused's knowledge is in any event natural and irresistible, and that comment on the failure does not magnify that inference into a penalty for asserting a constitutional privilege. People v Modesto, — Cal 2d —, —, 398 P2d 753, 762–763. What the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another. . . .

". . . [T]he Fifth Amendment . . . forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."

These authorities convincingly demonstrate the invalidity of the law officer's instructions. It is useless to say the accused's silence may not be weighed against him when, in the same breath, the fact finders are informed he has the burden of explaining away the Government's case or risking the adverse impact thereof. In truth, he is clothed with the presumption of innocence until such has been removed by proof of guilt—in the minds of the court members—beyond a reasonable doubt. His silence creates no presumption against him, nor by electing to follow the course of not testifying is he to be penalized for having such used

against him. Griffin v California, supra; Wilson v United States, supra. We conclude, therefore, that the law officer's advice was prejudicially erroneous and requires reversal of those charges to proof of which he put the Government.

The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Army. The board may reassess the sentence on the basis of the absences without leave to which accused pleaded guilty or order a rehearing on specification 2 of Charge I, Charge II and its specification, and the penalty.

Chief Judge QUINN and Judge KILDAY concur.