UNITED STATES, Appellee

v

WILLIAM S. FORT, Private, U. S. Army, Appellant

16 USCMA 86, 36 CMR 242

No. 18,986

March 4, 1966

*First Lieutenant Paul V. Melodia* argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph L. Chalk* and *Lieutenant Colonel Martin S. Drucker.*

*Captain Stephen G. Weiss* argued the cause for Appellee, United States. With him on the brief were *Colonel Joseph J. Crimmins* and *Lieutenant Colonel Francis M. Cooper.*

## Opinion of the Court

QUINN, Chief Judge:

A general court-martial in Germany convicted the accused, on his plea of guilty, of assault upon a sixty-eight-year-old woman with intent to gratify his sexual desire, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. It sentenced him to a bad-conduct discharge, confinement at hard labor for one year, and accessory penalties.

Before a board of review, the accused contended he was prejudiced as to the sentence by the law officer's improper limitation of the defense *voir dire* of the court members and by a remark as to the sentence. The board of review rejected both assignments of error as lacking in merit and affirmed the findings of guilty and the sentence. The same contentions are advanced in this Court.

On the *voir dire,* defense counsel asked whether any court member believed that conviction would require a punitive discharge. The law officer asked counsel to clarify the question. The rephrased question and the colloquy which resulted are as follows:

"DC: In spite of any mitigation, or extenuating circumstances. Just the sole fact of conviction on this charge. Regardless of what may be presented in the case. Regardless of what may be presented in extenuation. Do you think this would require a punitive discharge?

"PRES: I think it might. I don't know that it would require it absolutely, but you made an assumption that he is guilty. This is an assumption that we don't know yet.

"LO: I don't think we ought to carry this—I think the question is improper because of the way it is worded.

"DC: Sir, can I rephrase the question?

"LO: All right, rephrase the question. You make it a very difficult question to answer because the nature of the offense in itself calls for a punitive discharge. The nature of the offense itself, if one is found guilty, calls for a punitive discharge and other accessories. The way you have the question

**87**

worded makes it difficult for anyone to answer it.

"DC: Well, my question is this, sir, I'll rephrase it, that regardless of what is presented in mitigation or extenuation, regardless of what comes in at this point, that you would require—that you would find that this would require a punitive discharge, regardless of what might be brought in later as to the circumstances surrounding the—or any extenuation or mitigation.

"PRES: Well, I think it might.

"LO: Does any member of the court wish to comment?

"MEMBER: I think it might.

"LO: I think the question is highly improper and I don't think we'll go into this discussion. If you wish to question the members individually, you may do so. I think that collectively it is difficult to answer this question any way.

"DC: I was directing my question to each member individually, of what their feelings were. Instead of asking each member individually, I directed it to the court as a whole, but trying to ascertain each individual's feelings, or if they did have feelings. At this time the defense does not have any challenge for cause, but we would respectfully like to challenge peremptorily, Colonel Jones."

Military due process assures the accused the right to court members who are impartial, and who will determine his sentence upon the basis of the matters presented in the courtroom. Fixed preconceptions or "inelastic attitude[s]" on the part of a court member as to the type of punishment that should be imposed for particular offenses, or upon a particular accused, subject him to challenge for cause. United States v Cleveland, 15 USCMA 213, 217, 35 CMR 185. The *voir dire* of a court member may properly extend into his predispositions or prejudices, if any, as to the sentence. While the law officer

should not be picayune about niceties of form or expression by defense counsel, he is responsible for the manner in which the *voir dire* is conducted, and his rulings, therefore, should be reviewed with "circumspection." United States v Freeman, 15 USCMA 126, 128, 35 CMR 98. As we interpret the rulings here, the law officer may have misunderstood the meaning of defense counsel's question, but he did not prohibit further inquiry. The initial ruling that defense counsel rephrase the question resulted eventually in a question that actually elicited a response from the president and another court member. The final ruling merely was that defense counsel could "question the members individually" on the matter. That ruling was appropriate.

The answer of the president and the other court member, that conviction "might" require a punitive discharge, indicated that the strength of their feeling or belief could be tested only by questioning each separately. The law officer could reasonably conclude that the basis for disqualification was so individual a matter that it could be better explored by separate questioning of each member. The record of trial, therefore, demonstrates that the law officer did not prevent further inquiry into the subject matter; he merely required defense counsel to pursue the examination in another form.

There is a suggestion that the law officer's comments on the impropriety of the question made it futile for defense counsel to continue the inquiry in any form. See United States v Smith, 6 USCMA 521, 20 CMR 237; United States v Sutton, 15 USCMA 531, 36 CMR 29; United States v Staskus, 20 CMR 556. We see no risk that acceptance of the opportunity offered by the law officer would merely tend to alienate the court members against the accused. There is nothing in this record, as there was in the *Smith* case, to indicate that all the court members were committed to a predetermined point of view. Also, the present case is opposite to *Sutton*. There, a *voir dire* of specific court members was not

only criticized by the law officer as improper, but his ruling prescribed erroneous guidelines for continuation of the inquiry. Here, the general examination was directed to be made specific, and no erroneous limits were prescribed to confine the examination. The law officer's ruling in this case left open to the defense a genuinely useful course for further inquiry into the sentence predilections, if any, of the individual court members. The defense failure to avail itself of the opportunity provides no tenable ground for reversal of the accused's conviction. United States v Talbott, 12 USCMA 446, 31 CMR 32.

In the second assignment of error, the accused contends the law officer's comment that the "offense in itself calls for a punitive discharge" was prejudicial. In the post-trial review, the staff judge advocate interpreted the comment as referring only to the *"authorized* punishment for the offense," but he conceded it could be construed as "an opinion concerning the punishment that should be imposed in the event of conviction." Appellate defense counsel maintain that the latter is the "only reasonable interpretation." Whichever interpretation is arrived at is immaterial. As long as the comment can reasonably be construed as expressing the law officer's opinion, its probable impact upon the court members should be measured. However, the evaluation requires consideration of all relevant circumstances.

During the sentence proceedings, and before the court retired to deliberate on the sentence, the ■■■■■■ ■ law officer instructed the court members that they alone had the responsibility to adjudge an appropriate sentence; and that they were "not restricted" as to the type of punishment, nor as to any combination of penalties. They were further instructed that the punishment should be "appropriate to the individual accused and to the particular case." Various mitigating factors, such as the accused's age, family and personal problems, and the fact that he entered

a plea of guilty, were called to the court's attention. In addition, the law officer expressly instructed the court members that they "must not" interpret his instructions as an opinion as to the kind or amount of punishment which should be imposed, because they "alone have the independent responsibility of making this determination." Few instructions could more forcefully or more completely point out that the law officer's opinion should not be considered during the sentence deliberations. The record of trial leaves no doubt that, whatever its interpretation, the law officer's remark did not influence the court members in their determination of the sentence. United States v Andis, 2 USCMA 364, 8 CMR 164; United States v Wimberley, 16 USCMA 3, 36 CMR 159.

Going beyond the assignments of error, we have also assessed the implications of the answer by the president and another court member that the nature of the offense "might" lead them to adjudge a punitive discharge. Aside from the defense failure to pursue the inquiry or to challenge either member for cause (see United States v Dyche, 8 USCMA 430, 24 CMR 240; United States v Talbott, supra), we are satisfied that the answer is not indicative of an unalterable opinion. Cf. United States v Lynch, 9 USCMA 523, 26 CMR 303.

In its worst light, the answer reflects a tentative impression that a punitive discharge is appropriate punishment for ■■■■■■■ ■ assault upon an elderly female, with an intent to gratify sexual desire. One more knowledgeable of the disqualifying effect of personal opinion might respond somewhat more cautiously, but the tenor of the answer would probably be the same as that given. Some offenses are so heinous or so repugnant to common decency that the first thought of a court member might well be that the accused should, if convicted, be sentenced to a punitive discharge. A provisional impression of this kind is practically unavoidable. The law recognizes that

**89**

a juror may enter the jury box with an unfavorable inclination toward certain offenses. See United States v Dean, 5 USCMA 44, 17 CMR 44. Such a juror, however, is not automatically disqualified. The question is whether, despite appropriate instructions to disregard the inclination, it is so strong that the juror will be influenced by it in his deliberations. In our opinion, the qualified nature of the answer by the president and the other court member demonstrates that they were prepared to surrender their impression and to adjudge a sentence entirely upon the basis of the evidence and the law propounded by the law officer. Cf. United States v Lynch, supra. From the record of trial, it is clear that the accused was fairly tried, convicted, and sentenced, and that no error was committed which prejudiced him in any substantial right.

The decision of the board of review is affirmed.

Judge KILDAY concurs.

FERGUSON, Judge (dissenting):

I dissent.

The essence of the principal opinion is that a punitive discharge and other penalties are appropriate punishment for an indecent assault, in violation of Uniform Code of Military Justice, Article 134, 10 USC § 934. If the court members indicate their predisposition to adjudge such a sentence and the law officer tells them it is demanded by the nature of the crime, why, then, there is no prejudice to the accused, for the need for such punishment, in the minds of any juror, is practically unavoidable. I find such propositions, which underlie my brothers' rationale, completely unacceptable and contrary to our decided cases.

## I

The accused pleaded guilty to indecent assault and was, in accordance with that plea, found guilty. After introduction of extensive evidence in mitigation and extenuation, he was sentenced to bad-conduct discharge, forfeiture of all pay and allowances, confinement at hard labor for one year, and reduction. Following affirmance below, we granted his petition for review on issues which, as set out in the principal opinion, involve the law officer's actions relative to defense inquiries on *voir dire* and his statement that the "nature of the offense itself, . . . calls for a punitive discharge and other accessories."

The issues require an examination of the colloquy between counsel, the law officer, and court members, which is reflected in the record as follows:

"DC: At this time I would like to ask the court just a few questions.

"LO: You may proceed.

### VOIR DIRE

"DC: The first question that I would like to ask all the members of the court—has a member of the family or close friend of any member of the court ever been the victim of any type of sexual assault?

"PRES: None.

"DC: The second question is: Does any court member believe that a conviction of the accused of assaulting Mrs. Schofer, an elderly German, with the intent to gratify his sexual desires, would require a punitive discharge?

"PRES: Would you repeat the question?

"DC: Does any member of the court believe that, assuming the accused is found guilty of indecently assaulting Mrs. Anna Schofer, an elderly German, with the intent to gratify his sexual desires, that this would automatically require a punitive discharge?

"LO: Counsel, I believe you had better clarify your question on this —on the sole basis that it is a difficult question for anyone to answer. Do you mean in spite of any extenuation or mitigation?

"DC: In spite of any mitigation, or extenuating circumstances. Just the sole fact of conviction on this charge. Regardless of what may be presented in the case. Regardless

of what may be presented in extenuation. Do you think this would require a punitive discharge?

"PRES: I think it might. I don't know that it would require it absolutely, but you made an assumption that he is guilty. This is an assumption that we don't know yet.

"LO: I don't think we ought to carry this—I think the question is improper because of the way it is worded.

"DC: Sir, can I rephrase the question?

"LO: All right, rephrase the question. You make it a very difficult question to answer because the nature of the offense in itself calls for a punitive discharge. The nature of the offense itself, if one is found guilty, calls for a punitive discharge and other accessories. The way you have the question worded makes it difficult for anyone to answer it.

"DC: Well, my question is this, sir, I'll rephrase it, that regardless of what is presented in mitigation or extenuation, regardless of what comes in at this point, that you would require—that you would find that this would require a punitive discharge, regardless of what might be brought in later as to the circumstances surrounding the—or any extenuation or mitigation.

"PRES: Well, I think it might.

"LO: Does any member of the court wish to comment?

"MEMBER: I think it might.

"LO: I think the question is highly improper and I don't think we'll go into this discussion. If you wish to question the members individually, you may do so. I think that collectively it is difficult to answer this question any way.

"DC: I was directing my question to each member individually, of what their feelings were. Instead of asking each member individually, I directed it to the court as a whole, but trying to ascertain each individual's feelings, or if they did have feelings. At this time the defense does not have any challenge for cause, but we would respectfully like to challenge peremptorily, Colonel Jones."

There is not the slightest imprecision in defense counsel's questions. At the most, a perfectionist might have carped at his use of the term "automatically" upon repeating his inquiry at the president's request. Yet, when asked to clarify that by the law officer, he immediately added the desired qualification of "In spite of any mitigation, or extenuating circumstances." Nevertheless, the law officer, although the president of the court apparently had no difficulty in answering the interrogatory, again immediately interfered and declared "the question is improper because of the way it is worded." Offering no guidance, he permitted the question to be rephrased again, but rendered the whole inquiry worthless by twice declaring to the counsel and the court "the nature of the offense in itself calls for a punitive discharge." Finally, when the question was once more put, and was answered by two court members in a manner indicating disqualification, the law officer again intervened, characterized the question as "highly improper," and stated, "I don't think we'll go into this discussion." As an afterthought, he granted permission to question the members individually, but added "that collectively it is difficult to answer this question any way."

I perceive nothing at all unfair or difficult in either the question as it was severally put, or in ascertaining an answer thereto. Neither did the court members, for both the president and another member replied individually that each "might" adjudge a punitive discharge without regard to the evidence in mitigation or extenuation—a mandatory penalty, based solely on the nature of accused's offense.

The law officer's unwarranted and repeated interference with counsel's *voir dire* undoubtedly led the latter to abandon the challenging process as hopeless, and presents, in my opinion,

a situation precisely analogous to that before us in United States v Sutton, 15 USCMA 531, 36 CMR 29. There, the law officer also interrupted counsel's *void dire,* and limited inquiry into the court member's beliefs concerning the doctrine of reasonable doubt. In consequence, defense counsel, as here, leveled no challenges for cause. We concluded the law officer abused his discretion in arbitrarily curtailing the defense examination of the members, stating, at page 536:

"The teaching of these cases is clear. While an accused is not entitled to favorable court members or any particular kind of juror, he is guaranteed the right to fair-minded and impartial arbiters of the evidence. . . . Thus, it seems entirely proper for counsel to interrogate a member, as in this case, as to whether he entertains such beliefs. . . ."

Here, the defense's perfectly plain inquiries dealt with impartial consideration of the sentence in light of the evidence presented, rather than with the merits of the case. The distinction, however, is immaterial, for we have squarely held him entitled to discover whether the court members have a fixed determination as to the quantum of punishment which should be adjudged. United States v Cleveland, 15 USCMA 213, 35 CMR 185. In that case, we quoted with approval the Chief Judge's statement in United States v Parker, 6 USCMA 274, 19 CMR 400, at page 285:

"'An accused is entitled to have his sentence as well as his guilt adjudged by court members who are uninfluenced by predetermined and fixed ideas.'" [*Cleveland,* supra, at page 216.]

It is also worthy of note that in *Cleveland,* supra, we found the fixed determination of a court member to impose a punitive discharge, regardless of the evidence, so grave a defect as to make him "cloaked in his disqualification throughout his participation both on the merits and on punishment." *Id.,* at page 217.

Summed up, then, we have before us a record in which the arbitrary hostility of the law officer to the subject matter of the defense *voir dire* breaks through like a beacon. See United States v Sutton, supra. As the staff judge advocate recognized in his post-trial review, it is apparent the law officer thought counsel had no right to pursue this line of inquiry, for he expressly advised the court such was improper and that the offense itself demanded imposition of a punitive discharge. That he erred, and thereby substantially restricted counsel is demonstrated by our holding in *Cleveland,* supra, and the many authorities to which Judge Kilday there alluded. The law officer having made his view of the law, albeit erroneous, perfectly clear to the court, counsel should not be now held to have foregone the matter by failing to level the ultimate challenge. As we said in United States v Smith, 6 USCMA 521, 20 CMR 237, at page 526:

". . . [I]t would appear that a challenge for cause . . . would have constituted a vain and nugatory gesture, and one reaching a new low in inutility."

I am, therefore, of the view that the law officer arbitrarily and prejudicially interfered with the scope of defense counsel's *voir dire* and that, on this ground, reversal is required. I would so order.

## II

The second question before us is, to a large extent, bound up with the first. Not only does it form an inseparable part of the law officer's action with regard to the challenging process, but, at the same time, it made express his belief and ruling to the court that the "nature of the offense itself, if one is found guilty, calls for a punitive discharge and other accessories."

Even the staff judge advocate, in his post-trial review, conceded the law officer's statement might fairly be construed as "an opinion concerning the punishment that should be imposed in the event of conviction." I would go further, and declare that such is the

only reasonable interpretation of the comment. The law officer did not pretend to suggest merely that the maximum punishment authorized for the offense included "a punitive discharge and other accessories." He twice declared "the nature of the offense in itself *calls for*" (emphasis supplied) such punishment. By definition, he told the court such punishment was demanded or required as an appropriate sentence in every instance of indecent assault, and, by his choice of language, he left no doubt in the members' minds as to what punishment should be imposed.

In United States v Cleveland, supra, we specifically held a court member disqualified by having formed and expressed a predetermined and fixed notion as to the quantum of punishment to be adjudged in a case, based on the nature of the offense. We reversed for the failure of the trial court to sustain a challenge leveled at such a member. The situation is much more aggravated when, as here, the law officer propounds the same proposition to *all* the members of the court and counsel, telling them in no uncertain terms that an appropriate sentence for any indecent assault—"the nature of the offense in itself"—requires adjudication of a punitive discharge and accessorial punishments. Such, in fact, became fairly the rod by which the court members thereafter measured the accused's sentence and, under our opinion in *Cleveland,* supra, I am at a loss to see how any other conclusion can be reached. See also United States v Lynch, 9 USCMA 523, 26 CMR 303; United States v Sutton, supra; and United States v Parker, supra. My brothers, however, do not pretend to reach any other conclusion. They rely instead on the final, general instructions of the law officer to the court to consider all pertinent factors in their determination of an appropriate sentence; to disregard any portion of his instructions which might be regarded as expressing an opinion on the kind or amount thereof; and admonishing the court it alone had the independent responsibility of making this determination.

In my opinion, these instructions did not serve at all to cure the earlier, erroneous statement, separated as the two were by the entire body of the trial. Moreover, the law officer thereby did no more than tell the court it had the independent function of determining an *appropriate* sentence. But the error here is that he had already informed them that an *appropriate* sentence—from the offense itself—required inclusion of a punitive discharge and accessories. Thus, at best, the instructions are no more than an admonition to the court to perform its duty within the framework of the earlier and prejudicially erroneous comment—a task which it proceeded at once to complete. As the accused was entitled to be tried and sentenced by good men and true, who stood impartial between him and the United States on the issue of punishment, I cannot agree that the specific and detailed statement of the law officer at the outset of the *voir dire* was cured by the final, boiler plate instructions on the sentence.

In sum, then, I would reverse here for the arbitrarily restrictive attitude displayed by the law officer toward counsel's attempted *voir dire* and the explicit avowal to the court concerning the nature of the punishment required by the offense. No part of due process is quite as important to an accused as that procedural portion designed to obtain for him neutral court members. "Fairness and impartiality on the part of the triers of fact constitute a cornerstone of American justice." United States v Dean, 5 USCMA 44, 49, 17 CMR 44, 49. Here, the law officer contributed prejudicially to the destruction of that essential portion of the edifice of justice, and thereby denied the accused his right to be tried impartially on his sentence. Reaching this conclusion, I cannot join in the affirmance of his punishment.

I would reverse the board of review and order a rehearing on the sentence.