**UNITED STATES**

v.

**Airman Steven E. WILLIAMS, FR 420–88–9967, United States Air Force.**

**ACM 22495.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 8 Dec. 1978.

Decided 31 Aug. 1979.

**507**

DECISION

HERMAN, Judge:

We are concerned, in this case, with a defense challenge for cause of a member of the court, and with the objectivity of the general court-martial convening authority who took action. We find that the military judge properly denied the challenge in that the member did not harbor an "inelastic" attitude toward a sentence of punitive discharge, and that the convening authority was not disqualified from taking action on the case because of an anti-drug abuse program he initiated in his command.

In accordance with his pleas, the accused was convicted by general court-martial of two specifications of transfer of amphetamines, possession and transfer of mandrax, use of hashish, and possession of marihuana, violations of Uniform Code of Military Justice, Articles 92 and 134, 10 U.S.C. §§ 892 and 934. In addition, he was found guilty of possession and sale of cocaine and conspiracy to transfer or sell amphetamine, violations of the Code, *supra*, Articles 134 and 81, 10 U.S.C. § 881. The approved sentence is a bad conduct discharge, confinement at hard labor for 12 months, forfeiture of $279.00 per month for 12 months and reduction to airman basic.

The voir dire examination of one of the members of the court reveals, according to the trial defense counsel, an inelastic attitude toward the imposition of a punitive discharge. The pertinent portions of that examination follow:

IDC: You indicated you read General Pauly's letter in—his article in the Stars and Stripes, would you agree with his statement that suppliers, repeat offenders and addicts will be disciplined and, in the absence of unusual circumstances indicating rehabilitation potential, separated?

Col W: Yes.

. . . . .

IDC: Sir, you have already indicated you agreed with the sentence I read you from General Pauly; knowing that and considering the nature of the charges,

Appellate Counsel for the Accused: Colonel B. Ellis Phillips and Captain Robert P. Hailey. Captain Gary A. Enders filed a brief on behalf of the accused.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., Lieutenant Colonel Merton F. Filkins, Captain Robert T. Mounts and Lieutenant Colonel William H. Seckinger, USAFR.

Before EARLY, HERMAN and ARROWOOD, Appellate Military Judges.

would you and the other members of the court expect Airman Williams to demonstrate unusual circumstances indicating his rehabilitation potential in order to remain in the Air Force.

Col W: Definitely.

.         .         .         .         .

TC: Sir, I would just like to reaffirm what's been asked you already do you feel you can determine an appropriate sentence based strictly on the evidence presented and nothing more?

Col W: Yes.

TC: Are you willing to disregard anything outside the scope of what you hear in the courtroom as presented to you in the form of evidence, live testimony and documentary evidence?

Col W: Yes.

.         .         .         .         .

IDC: Assuming that Airman Williams cannot demonstrate such unusual circumstances indicating his rehabilitation potential, considering the nature of the charges, would you feel that a punitive discharge would be an appropriate punishment?

Col W: Yes.

.         .         .         .         .

TC: Would you be willing to consider all the evidence presented on both sides in weighing and determining in your own mind whether a punitive discharge is, in fact, appropriate type punishment?

Col W: Definitely, yes.

MJ: Colonel [W] do you feel that there is some burden upon this accused or any accused to demonstrate why some punishment should not be visited upon him as opposed to a requirement from the Government to demonstrate why some punishment should be imposed?

Col W: I would think that the Government would demonstrate why we should impose punishment.

MJ: Do you feel that that is their burden?

Col W: That's the Government's burden, yes.

■ If a member of a court-martial evidences an inelastic attitude toward the imposition of a punitive discharge, based solely on the nature of the crime or crimes being tried, the military judge is bound to sustain a challenge for cause to this member. *United States v. Cosgrove*, 1 M.J. 199 (C.M.A.1975); *United States v. Karnes*, 1 M.J. 92 (C.M.A.1975); *United States v. Cleveland*, 15 U.S.C.M.A. 213, 35 C.M.R. 185 (1965).

However, the fact that, at the beginning of the trial, a court member intuitively feels a conviction for specified offenses justifies a particular kind of punishment does not necessarily disqualify him. "The real test," we have said, "is whether he is mentally free to render an impartial finding and sentence based on the law and the evidence." *United States v. Parker*, 6 U.S.C.M.A. 274, 284–285, 19 C.M.R. 400. Thus, if the *voir dire*, as a whole, demonstrates that the court member's initial impression "will easily yield to the evidence presented in open court and to the law propounded" by the law officer, he need not be excused. *United States v. Deain*, 5 U.S.C.M.A. 44, 49, 17 C.M.R. 44.

*United States v. Tucker*, 16 U.S.C.M.A. 318, 320, 36 C.M.R. 474, 476 (1966); see also, *United States v. McGowan*, 7 M.J. 205 (C.M. A.1979); *United States v. Fort*, 16 U.S.C. M.A. 86, 36 C.M.R. 242 (1966); *United States v. Findlay*, 7 M.J. 931 (A.C.M.R. 1979).

■ Examining the questions, and the responses by Colonel W, we are convinced that, although he had an initial impression that a punitive discharge was appropriate for the offenses charged, he was willing to base his voting on the sentence strictly on the evidence presented, and, for that matter, place a burden on the Government to demonstrate what form of punishment was appropriate. This attitude is hardly what one may term, "inelastic" or "unyielding." On the contrary, "the qualified nature of the answer by the . . . court member demonstrates that [he was] prepared to surrender [his] impression and to adjudge a sentence entirely upon the basis of the evi-

dence and the law propounded by the [judge]." *United States v. Fort, supra*, at 246. We find, therefore, that the military judge's denial of the challenge was entirely correct. See also, *United States v. Tippit*, 7 M.J. 908 (A.F.C.M.R.1979).

In his response to the review of the staff judge advocate, *United States v. Goode*, 1 M.J. 3 (C.M.A.1975), trial defense counsel asserts that the convening authority was disqualified from acting in this case as a result of a predisposition to punitively separate drug suppliers. This is allegedly supported by a letter, signed by the convening authority, a subparagraph of which reads:

> c. *Disposition of Abusers.* Individuals who have performed well and possess potential for continued service should be appropriately disciplined, rehabilitated, and retained. Suppliers, repeat offenders, and addicts will be disciplined and, in the absence of unusual circumstances indicating rehabilitation potential, separated from the Air Force.

Other portions of the letter captioned, "Counterpush," point out a growing drug threat resulting from an overproduction of opium targeted for the illicit European market, and increases in drug-related crimes, deaths, arrests and seizures. The letter calls for intensified efforts to counter the threat of drugs through, not only the disposition of drug abusers as quoted above, but also increased investigative resources, cooperation with host nations, and emphasis on education directed toward military personnel, civilian employees and dependents concerned with the personal threat of drugs and their effect upon mission readiness. An attachment to the letter offers suggestions in training, education, investigation, rehabilitation, and alternative recreational activities. The letter and policy were apparently widely advertised in American media for military personnel.

The military commander has traditionally been responsible for the health, welfare, support, morale, and discipline of the members of his command,[1] expecting in return loyalty and dedication to mission. This fundamental principle of military life is visible in Air Force Regulation 30–2, Social Actions Program, 8 November 1976, which provides guidance and directives respecting drug abuse:

> All commanders, and their representatives in the social actions office, must be concerned for the well-being and morale of the individuals, families and groups under their command. The effectiveness of the mission depends on this. Prime effort, however, must be directed toward resolving, eliminating, or neutralizing the social and cultural conditions that have a direct negative impact on mission effectiveness.

AFR 30–2, *supra*, paragraph 1–1a, Change 1, 22 July 1977. In fact, paragraph 1–2c of this directive places specific responsibility upon the Commander in Chief, United States Air Forces in Europe: "Each major command . . . will . . . (2) Identify problem areas through trend analysis, and take appropriate corrective and preventive measures."

The peculiar problem that drugs pose for the armed services has been recognized by the United States Supreme Court[2] and Courts of Appeals. In *Committee for GI Rights v. Callaway*, 171 U.S.App.D.C. 73, 83, 518 F.2d 466, 476 (1975), Senior District Judge Jameson pointed out:

> The increased incidence of drug abuse in the Armed Forces poses a substantial threat to the readiness and efficiency of our military forces. Unlike the civilian population, the military forces are charged with the responsibility of continuously protecting the nation's interests

---

1. In an extreme case, the commander may be held criminally responsible for the acts of his subordinates due in part to a lack of morale and discipline. *In re Yamashita*, 327 U.S. 1, 17, n. 4, 66 S.Ct. 340, 90 L.Ed. 499 (1946); Air Force Pamphlet 110–31, International Law—The Conduct of Armed Conflict and Air Operations, para. 15–2b (19 November 1976); Department of the Army Pamphlet 27–161–2, International Law, Volume II, 240–43 (23 October 1962).

2. *Schlesinger v. Councilman*, 420 U.S. 738, 761, n. 34, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975).

both on the domestic and international level. Widespread use of marijuana, hashish and other drugs can have a serious debilitating effect on the ability of the Armed Services to perform their mission. As noted in the extensive evidence submitted by the appellants, drug use among GIs in the USAREUR had (a) lessened the on-the-job efficiency of GIs; (b) significantly reduced the number of effective soldiers in the European command; (c) required the expenditure of enormous amounts of supervisory time to monitor all aspects of the drug control and rehabilitation process; (d) strained the limited medical resources of the European Command; (e) created a significant health threat; and (f) resulted in an increased incidence of crime.

See also *Peterson v. Goodwin*, 512 F.2d 479, 480 (5th Cir. 1975).

The convening authority, as the Commander-in-Chief of the United States Air Forces in Europe, was doing no more than his duty required in calling for increased efforts on the part of his subordinate commanders to combat the problem of drugs in his command. As to the policy set out in his letter for the disposition of offenders, it is apparent that he was simply reiterating and disseminating Air Force policy which had recently been published in Interim Message Change 78–02, dated 15 March 1978, to Air Force Regulation 30–2, reading,

> It is general Air Force policy to discharge addicts and drug suppliers. Exceptions to permit retention may be authorized only where the most unusual circumstances exist and provided the airman's ability to perform military service has not been compromised.

■■ Policy declarations generally conceded to be necessary to discipline are proper. *United States v. Betts*, 12 U.S.C.M.A. 214, 30 C.M.R. 214 (1961). However, where a policy directive directly tends to control the judicial processes rather than to im-

prove the discipline of the command, it is illegal. *United States v. Hawthorne*, 7 U.S. C.M.A. 293, 22 C.M.R. 83 (1956). Similarly, where a convening authority believes that his discretion to remit or suspend a punitive discharge has been withdrawn by directives, his action on the sentence cannot stand. *United States v. Doherty*, 5 U.S.C.M.A. 287, 17 C.M.R. 287 (1954).

■ The policy enunciated in both the Air Force Regulation 30–2, *supra*, and the letter of this convening authority contains no language whatsoever which we construe as tending to control the judicial process. Neither evince any policies directing that particular types of misconduct be referred to general or special courts-martial, and punitive discharges are not recommended, or, for that matter, even mentioned. As we cannot find any attempt to influence the court-martial process or any attitude or propensity to approve punitive discharges, we will not attribute a lack of objectivity or freedom of choice to the convening authority when he took action in this case.[3] On the contrary, his concern for the problem of drug abuse and mission are expected of a responsible commander.

The errors assigned by appellate defense counsel, and those raised by trial defense counsel in his response to the review of the staff judge advocate are considered to be without merit.

The findings of guilty and the sentence are, accordingly,

AFFIRMED.

EARLY, Chief Judge and ARROWOOD, Judge, concur.

---

**3.** The addendum to the review of the staff judge advocate advises the convening authority, "Though punitive separation by court-martial action is one method of separation, your comments [in the policy letter to commanders] make no rule that those offenders be punitively separated and naturally permits administrative separation."