**UNITED STATES, Appellee,**

v.

**Staff Sergeant Marshall F. DAVENPORT, SSN 223–68–8052, United States Army, Appellant.**

**CM 441370.**

U. S. Army Court of Military Review.

30 July 1982.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Raymond C. Ruppert, JAGC, Major Charles A. Byler, JAGC, Captain Edward J. Walinsky, JAGC, and Captain Marcus C. McCarty, JAGC, were on the pleadings for appellant.

Colonel R. R. Boller, JAGC, Major John T. Edwards, JAGC, Captain Kenneth H. Clevenger, JAGC, and Captain John J. Park, Jr., JAGC, were on the pleadings for appellee.

Before O'DONNELL, FOREMAN and WERNER, Appellate Military Judges.

## OPINION OF THE COURT

FOREMAN, Judge:

Contrary to his pleas, the appellant was convicted of unpremeditated murder, by stabbing a fellow noncommissioned officer in the chest with a knife, in violation of Article 118, Uniform Code of Military Justice, 10 U.S.C. § 918. His adjudged and approved sentence provides for a dishonorable discharge, confinement at hard labor for twenty years, total forfeitures and reduction to Private E–1.

The appellant contends that the military judge abused his discretion by denying a defense challenge for cause of a court member, Lieutenant Colonel (LTC) Hagler, who was challenged on the ground that he had an inelastic attitude on sentencing.

During voir dire the individual defense counsel asked LTC Hagler whether he thought there was "any place in the service for a staff sergeant who has been convicted of unpremeditated murder." The following colloquoy ensued:

LTC Hagler: I would have to weigh the evidence, but ah—looking at the charge and if found guilty of the accusation here, ah—no, I do not.

IDC: Do you think that the background of the service member or the circumstances of the offense, assuming that he is found guilty, could you imagine anything that might dissuade you from that feeling?

LTC Hagler: When I read the flyer here and it says, "murder" as opposed to manslaughter, that weighs very heavily in my mind; where being in a unit, where almost everyday, there are situations very close to that ah—that occur—either good or bad, and if in fact the accused in this case were found guilty by the panel of the charge of murder, then I would say that there is certainly no further use for him on the active duty rolls.

IDC: And that would be regardless of his background or the circumstances of the case?

LTC Hagler: I can't say that without seeing the evidence, but I would tend to say yes. You are asking me a question in a total vacuum.

IDC: Yes, Sir—I am. For this reason—there are people who feel strongly about one offense or another because of their backgrounds and personal experiences. Each of us reacts differently, ah—when confronted with different offenses.

LTC Hagler: That's true.

IDC: And there is some of us, who because of our educational, emotional personal backgrounds, feel so strongly about a particular type of offense, that regardless of what we lawyers call extenuation and mitigation, the background of the accused, circumstances surrounding the offense, the personal feelings are so strong that in all honesty the jury member would feel compelled personally to vote for expulsion from the Service—could not conceive of honestly and fairly considering to permitting such a service member to remain in the service.

LTC Hagler: Why don't you ask me this, Mr. Cohen. Would I want the accused, if proven guilty, to serve in my battalion or the United States Army ever in any capacity for me—my answer is definitely not.

The trial counsel then questioned LTC Hagler as follows:

TC: Is what you're saying—is that if this accused was found guilty as charged, of unpremeditated murder, you would consider his entire background or whatever was presented to you by the defense or the Government for that matter, as well as the nature of the offense itself?

LTC Hagler: Precisely. I responded in the affirmative when Mr. Cohen asked that question earlier of the whole panel.

TC: Does that mean that the nature of the offense, while going to be a factor and possibly a significant factor in your decision as to a sentence if that became necessary, does that mean that is going to be the only factor that you'll consider?

LTC Hagler: No; that is not going to be the only factor that I will consider. Mr. Cohen asked me if I remember correctly—if the accused were found guilty of the accusation—the charge as listed here—a Violation of Article 118 —the stabbing of another service member to death—right?

TC: That's correct, Sir.

LTC Hagler: Certainly I would weigh the total individual. I do it every week when I sit and go through Field Grade Article 15's. The chain-of-command comes in and they say, "how do you feel about this individual"; and I ask them their personal recommendations on each and every case that comes before me—before I go either way.

Lastly, the military judge questioned LTC Hagler as follows about his feelings regarding the continued military service of a person convicted of unpremeditated murder:

MJ: May I take it that ah—that simply is an acknowledgment—that you are aware that there are ways that people could be separated from the Military Service without a punitive discharge, even if you don't want to have them in the Army any longer?

LTC Hagler: Yes, Sir. That's why I look at the broad range as you instructed us to, Sir.

After the defense challenge for cause against LTC Hagler was denied, they challenged him peremptorily, stating for the record that they would have used their peremptory challenge against another member if the challenge for cause had been granted. There is authority for the position that use of the peremptory challenge of a member cures any error arising from the improper denial of a challenge for cause of that member. *See United States v. Harris*, 11 M.J. 589, 592 n.4 (AFCMR 1981), *aff'd*, 13 M.J. 288 (CMA 1982). However, two judges of the Court of Military Appeals have indicated that an erroneous denial of the challenge of a member for cause will survive the peremptory challenge of that member in some cases. *See United States v. Harris*, 13 M.J. 288, 292 (Fletcher, J), 293 (Everett,

C. J., dissenting). For the purpose of this opinion, we will assume without deciding that the issue regarding the challenge of LTC Hagler has been preserved for appellate review.

■ Distaste for an offense is not *per se* disqualifying. *United States v. Cleveland*, 15 U.S.C.M.A. 213, 215, 35 C.M.R. 185, 187 (1965); *United States v. Parker*, 6 U.S.C. M.A. 274, 284–85, 19 C.M.R. 400, 410–11 (1955); *United States v. Dean*, 5 U.S.C. M.A. 44, 49, 17 C.M.R. 44, 49 (1954); *accord, United States v. Mitchell*, 11 M.J. 907, 910 (ACMR 1981); *United States v. Findlay*, 7 M.J. 931, 935 (ACMR 1979), *pet. denied*, 8 M.J. 242 (CMA 1980).

Even an initial impression that a punitive discharge is appropriate is not necessarily disqualifying. *United States v. Mitchell, supra; United States v. Williams*, 8 M.J. 506 (AFCMR 1979), *pet. denied*, 8 M.J. 227 (CMA 1980); *see United States v. McGowan*, 7 M.J. 205, 206 (CMA 1979).

The more abhorrent the offense the more likely it is that court members will be predisposed toward a punitive discharge. When faced with one of the most serious offenses proscribed by the Code, a court member who states that he or she has no inclination toward a punitive discharge is either less than truthful or likely lacking in the qualifications set out in Article 25, Uniform Code of Military Justice, 10 U.S.C. § 825. As observed by Chief Judge Quinn:

> Some offenses are so heinous or so repugnant to common decency that the first thought of a court member might well be that the accused should, if convicted, be sentenced to a punitive discharge. A provisional impression of this kind is practically unavoidable. The law recognizes that a juror may enter the jury box with an unfavorable inclination toward certain offenses. See *United States v. Dean*, 5 USCMA 44, 17 CMR 44. Such a juror, however, is not automatically disqualified.

*United States v. Fort*, 16 U.S.C.M.A. 86, 89–90, 36 C.M.R. 242, 245–46 (1966).

■ The law does not entitle an accused to court members who, as a general proposition, would be willing to serve with convicted murderers. The test in each case is whether the challenged member will yield to the evidence and the instructions of the military judge. *United States v. McGowan, supra; United States v. Cleveland, supra; United States v. Parker, supra.*

■ Turning to the facts of this case, we have no doubt that LTC Hagler, when asked to consider the offense in a vacuum, was predisposed against the appellant's continued military service. However, LTC Hagler's answers as a whole make it clear that his predisposition would yield to the evidence and the law. Furthermore, LTC Hagler stated his awareness of the fact that there are other means short of a punitive discharge to terminate an accused's military service. His predisposition against the appellant's continued military service did not necessarily equate to a predisposition in favor of a punitive discharge.

The burden of maintaining a challenge is on the challenging party. Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 62$h$(2); *see United States v. Paulin*, 6 M.J. 38, 40 (CMA 1978); *United States v. Reed*, 2 M.J. 972, 975 (ACMR 1976); *United States v. Credit*, 2 M.J. 631, 646 (AFCMR 1976); *United States v. Grance*, 2 M.J. 846, 848 (ACMR 1976). The military judge was not satisfied that the defense had carried their burden in this case. His ruling should not be overturned unless he abused his discretion. *United States v. Dean, supra.* We conclude that he did not.

The appellant also contends that the evidence is insufficient to establish that he had the requisite intent to kill or inflict grievous bodily harm when he stabbed the victim. Having reviewed the evidence, we are satisfied, as were the court members, that the appellant entertained the requisite intent.

The findings of guilty and the sentence are AFFIRMED.

Senior Judge O'DONNELL and Judge WERNER concur.